UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT HAMMOND,

    Plaintiff,

v.                                                          Case No. 3:23-cv-1450-MMH-LLL

INTERNATIONAL
LONGSHOREMEN'S
ASSOCIATION, LOCAL 1408, et al.,

    Defendants.

## **O R D E R**

**THIS CAUSE** is before the Court on Defendants' Joint Motion to Dismiss Second Amended Complaint and Supporting Memorandum of Law of Defendants International Longshoremen's Association, Local 1408 and United States Maritime Alliance, LTD (Doc. 25; Motion), filed on May 10, 2024. In the Motion, Defendants seek dismissal of Plaintiff's Second Amended Complaint for Relief and Demand for Jury Trial (Doc. 14; Second Amended Complaint), filed on March 8, 2024. Plaintiff timely filed a response in opposition to the Motion. See Plaintiff's Response in Opposition to Defendants' Joint Motion to Dismiss Second Amended Complaint (Doc. 29; Response), filed on May 30, 2024. Accordingly, this matter is ripe for review. For the reasons below, the

Court finds that the Motion is due to be granted and the Second Amended Complaint is due to be dismissed.

## I.     Background[1]

This action involves a collective bargaining agreement (CBA) between the two Defendants: United States Maritime Alliance, LTD (USMX) and International Longshoremen's Association, Local 1408 (Local 1408). See Second Amended Complaint ¶ 8. Plaintiff Robert Hammond first "became employed under the CBA" in 2004, which is when he started working for USMX and "became a dues-paying member of" Local 1408. Id. ¶¶ 13–14, 16–17. That same year, Hammond "left his position" with USMX at some point after completing his "first full 8 hours of employment." See id. ¶¶ 17–18 (internal quotation marks omitted). "In 2018, [Hammond] returned to employment under the CBA." See id. ¶ 19. The CBA includes a Seniority Plan which, according to Hammond, entitled him "to integrate his 2004 port wide seniority into the existing seniority list" after "no more than six months of re-employment." See id. ¶ 20.

---

[1] In considering the Motion, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to Hammond, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Second Amended Complaint, and may well differ from those that ultimately can be proved.

At an unspecified point in time, Hammond "discovered that he was not provided with seniority for his employment in 2004 nor for his employment from 2018 through the present." Id. ¶ 21. According to Hammond, if he had been credited with seniority beginning in 2004, he "would have been hired for a considerable number of additional hours of work." See id. ¶ 22. When USMX did "not afford[ ] [Hammond] his correct seniority," he filed a grievance with Local 1408 to "adjust his seniority" and "provide him with credit for his broken years of service." Id. ¶¶ 22, 23. But, Local 1408 "refused to appropriately adjust" his seniority "and instead deferred the decision to its counsel." Id. ¶ 24. In the Second Amended Complaint, Hammond asserts that, "[t]o date, no decision has been rendered regarding [his] grievance."[2] Id. ¶ 24; see also id. ¶ 27 (asserting that Defendants "effectively den[ied] the grievance" because they "have failed to provide any determination in response to [his] grievance").

In Count I of his Second Amended Complaint, Hammond asserts a claim against Local 1408, alleging that it breached its duty of fair representation by failing to adjust his seniority. See id. ¶¶ 29–35. And in Count II, Hammond

---

[2] On March 4, 2024, Hammond sought leave to file his Second Amended Complaint in part because "on January 29, 2024," Local 1408's "executive board finally addressed [his] grievance, denying him relief." See Plaintiff's Motion for Leave to Amend Complaint (Doc. 12; Motion to Amend) at 2. Confusingly, in his Second Amended Complaint Hammond continues to allege that "[t]o date, no decision has been rendered regarding [his] grievance." Second Amended Complaint ¶ 24. In resolving the Motion, the Court accepts the factual allegations in the Second Amended Complaint as true—including the allegations that Local 1408 has not issued a decision on Hammond's grievance. For the reasons discussed below, however, the result would not change if Hammond had instead alleged that Local 1408 had "finally addressed [his] grievance, denying him relief." See Motion to Amend at 2.

contends that USMX's "failure to recognize [his] seniority" violated the Seniority Plan, and thus constitutes a breach of the CBA. See id. ¶¶ 36–41. Defendants seek dismissal of the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)), arguing that Hammond has failed to state a plausible claim for relief in both Counts that he brings. See generally Motion.

## II. Legal Standard

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (citations and quotations omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678–79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Summary of Arguments

In the Motion, Defendants argue that both Counts in Hammond's Second Amended Complaint are fatally deficient. As to Hammond's claim in Count I that Local 1408 breached its duty of fair representation, Defendants contend that Hammond has not alleged facts supporting even an inference that its

handling of Hammond's grievance was arbitrary, discriminatory, or in bad faith. See Motion at 10–13. And regarding Hammond's claim in Count II that USMX breached the CBA, Defendants argue that Hammond relies on "a wholly irrational construction" of the Seniority Plan, and "has simply cherry-picked provisions of the wrong version of the [Seniority Plan] to reach his desired result."[3]  See id. at 8–9.

In his Response, Hammond argues that he has plausibly alleged that Local 1408 breached its duty of fair representation because "it is clear that [Local 1408] (a) refused to acknowledge [his] seniority rights upon his return to employment following his leave of absence, and (b) failed to process his grievance grieving the failure to credit [his] seniority following his return to employment." Response at 7. He also argues that "Local 1408 and USMX employed an irrational interpretation of the seniority provisions of the CBA in

---

[3] According to Defendants, the CBA documents which Hammond attaches to his Second Amended Complaint are from "the 2018 M & R Contract, and not the 2004 M & R Contract which was in effect" during Hammond's employment in 2004. See Motion at 8. Based on documents Defendants attach to their Motion, they argue that under the earlier version of the CBA, "seniority status only attached after a worker completed 'three (3) months continuous employment,'" not eight hours, and therefore Hammond has failed to plausibly allege that "seniority status ever attached to him" in 2004. See id. In his Response, Hammond does not appear to dispute that he was ineligible for seniority at the time he left his employment in 2004, nor does he appear to dispute the authenticity of the two different versions of the CBA documents which Defendants attach to their Motion. Instead, Hammond contends that "[u]pon his return" in 2018, he was entitled to seniority under the new CBA "based on his 8 hours of employment in 2004," and he also asserts that he has not been "provided seniority rights based on his employment from 2018 through the present." See Response at 3. But for the reasons discussed below, the Court need not determine whether Hammond is entitled to seniority under either version of the CBA.

order to deny [him] seniority," and asserts that Local 1408's "conduct was taken for an improper reason." Id. As to his claim against USMX for breach of the CBA, Hammond argues that "[e]ven if the eight hours worked were insufficient" for him to receive seniority in 2004, "he undoubtedly had met the prerequisites for port-wide seniority under the 2018 standard," and therefore "should have immediately been credited with seniority beginning in 2004" upon his return to work in 2018. See id. at 5. Accordingly, Hammond asserts that USMX breached "the plain language of the" CBA. See id.

## IV. Discussion

"It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 163 (1983). While ordinarily the "employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement," there is an exception when the employee alleges that the union has acted "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." Id. at 163–64. The Supreme Court has described such an action "as a 'hybrid § 301/fair representation claim.'" Coppage v. U.S. Postal Serv., 281 F.3d 1200, 1204 (11th Cir. 2002) (quoting DelCostello, 462 U.S. at 165). "The claim is 'hybrid' because it includes two causes of action that are 'inextricably interdependent.'" Oltmanns v. Int'l Longshoremen's Assoc.,

837 F. App'x 689, 693 (11th Cir. 2020) (quoting Coppage, 281 F.3d at 1204).[4] One is a "suit against the employer" pursuant to Section 301 of the Labor and Management Relations Act, 29 U.S.C. § 185, for breaching the collective bargaining agreement, and the other is a "suit against the union" for breaching its duty of fair representation under the National Labor Relations Act.[5] DelCostello, 462 U.S. at 164. Even when a plaintiff elects to "sue one defendant and not the other," the "case he must prove is the same whether he sues [the employer], the [union], or both." Id. at 165. Accordingly, "to succeed on [a] hybrid claim at the motion to dismiss stage," a plaintiff "must plausibly allege both that (i) his union . . . breached its duty of fair representation, and (ii) his employer . . . breached a collective bargaining agreement." Oltmanns, 837 F. App'x at 694 (citing Parker v. Connors Steel Co., 855 F.2d 1510, 1519 (11th Cir. 1988)). "The absence of either allegation is fatal to the complaint." Id.

---

[4] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[5] This statutory duty is not explicitly enumerated, but "is implied under the scheme of the National Labor Relations Act." DelCostello, 462 U.S. at 164 & n.14; see also Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 886 n.5 (11th Cir. 2013) (explaining that fair-representation claims arise "under federal common law," and that the duty is "implied from [the union's] status under § 9(a) of the NLRA as the exclusive representative of" its members (internal quotation omitted)).

### A. Duty of Fair Representation

The Court begins with Hammond's claim in Count I that Local 1408 breached its duty of fair representation. A union's duty of fair representation requires the union to "'represent fairly the interests of all bargaining-unit members during negotiation, administration, and enforcement of collective bargaining agreements.'" Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206 (11th Cir. 1982) (quoting Int'l Brotherhood of Elec. Workers v. Foust, 442 U.S. 42, 47 (1979)). This duty encompasses the obligation to process employee disputes through contractual grievance channels. Harris v. Chem. Leaman Tank Lines, Inc., 437 F.2d 167, 171 (5th Cir. 1971).[6] But an employee does not have "an absolute right to have his grievance taken to arbitration." Vaca v. Sipes, 386 U.S. 171, 191 (1967). Indeed, a "union is allowed considerable latitude in its representation of employees." Schwerman Trucking Co., 668 F.2d at 1206. For example, as the "exclusive agent for all employees in the bargaining unit, [a] union has the power to sift out frivolous grievances" and "abandon processing of a grievance which it determines in good faith to be meritless." Chem. Leaman Tank Lines, 437 F.2d at 171. And a union may exercise its discretion to "settle [a] grievance short of arbitration if its decision

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

is made in good faith, based upon an evaluation of the merits of the employee's claim and of the most advantageous expenditure of the [u]nion's resources." See Rogers v. Consol. Freightways Corp. of Del., 504 F. Supp. 357, 359 (M.D. Fla. 1980).[7]  Because of its broad discretion in representing employees, a union breaches its duty of fair representation only if the conduct at issue was "arbitrary, discriminatory, or done in bad faith."  See Parker, 855 F.2d at 1520.

Here, Hammond alleges that Local 1408 refused to "appropriately adjust [his] seniority" in response to his grievance, "deferred the decision to its counsel," and failed to render any final determination after an unspecified amount of time.  See Second Amended Complaint ¶¶ 24–27.  Based on these alleged failures, Hammond contends that "Local 1408 has therefore breached its duty of fair representation."  See id. ¶ 34.  Assuming arguendo that Hammond is entitled to seniority under the CBA, it is not enough for Hammond to plead that Local 1408 failed to pursue his grievance: "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious."  See Vaca, 386 U.S. at 195; Samples v. Ryder Truck Lines, Inc., 755 F.2d 881, 886 (11th Cir. 1985) (stating that "in the early stages of the grievance procedure the union has substantial latitude to refuse

---

[7] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

to press even a meritorious grievance"); Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 369 (7th Cir. 2003) (explaining that a union may properly consider "such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer" when deciding whether to take a claim to arbitration). Instead, Hammond must plead sufficient factual material, accepted as true, to permit the Court to draw the reasonable inference that Local 1408's acts or omissions were "arbitrary, discriminatory, or done in bad faith." See Parker, 855 F.2d at 1520; Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This, Hammond has not done.

As a preliminary matter, the Court notes that while Hammond asserts in his Second Amended Complaint that Local 1408's conduct was "arbitrary," see Second Amended Complaint ¶ 33, this is simply a legal conclusion which is not entitled to a presumption of truth. See Iqbal, 556 U.S. at 678. Aside from this bare legal conclusion, Hammond does not allege any facts which plausibly suggest that Local 1408's conduct was arbitrary. A union acts arbitrarily "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)). And "[c]ases are uniform in holding that neither negligence on the part of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an

arbitrary and perfunctory manner."[8]  Schwerman Trucking Co., 668 F.2d at 1206.  "Nothing less than a demonstration that the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct will suffice to establish such a claim."  Id. at 1206–07.  Hammond's threadbare assertions that Local 1408 "deferred the decision to its counsel" and had not rendered a decision "[t]o date," see Second Amended Complaint ¶ 24, are insufficient to permit a reasonable inference that Local 1408 acted "with reckless disregard" for his rights, or that its handling of his grievance was "grossly deficient."[9]  See Schwerman Trucking Co., 668 F.2d at 1206; see also Yeftich v. Navistar, 722 F.3d 911, 917 (7th Cir. 2013) (allegations on

---

[8] Perfunctory review of a grievance falls under the arbitrariness prong.  See Oltmanns, 837 F. App'x at 695–96 (characterizing Schwerman Trucking Co. as holding that "the arbitrariness prong prohibits a union from arbitrarily ignoring or giving perfunctory review" to a meritorious grievance); see also Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1243 (7th Cir. 1997) (explaining that "the arbitrariness analysis" is an inquiry into "the objective adequacy of the [u]nion's conduct" while "the discrimination and bad faith analyses look to the subjective motivation of the [u]nion officials").

[9] The Fourth Circuit Court of Appeals, in a decision not binding on this Court, has explained that "[m]alicious or egregious delay in pursuing plaintiffs' rights can" breach the duty of fair representation.  See Walker v. Consol. Freightways, Inc., 930 F.2d 376, 382 (4th Cir. 1991).  But while Hammond alleges that Local 1408 has delayed in addressing his grievance, he provides no information about the length of the delay.  Indeed, he does not allege even an approximate date on which he submitted his grievance, nor does he allege facts suggesting how long the grievance was pending without a decision, or that Local 1408 processed other grievances faster than his.  The facts Hammond pleads in his Second Amended Complaint simply do not permit the inference that any delay in processing his grievance was malicious or egregious.  Cf. Armstrong v. Chrysler Corp., 972 F. Supp. 1085, 1090 (E.D. Mich. 1997) (at summary judgment, determining that a two-year delay in processing the plaintiff's grievance was "not per se unreasonable" where there was no evidence of bad faith, the plaintiff "submitted no proof that the Union typically processes other grievances faster than his," and "nothing suggest[ed] that the passage of time affected the ultimate disposition of [the] plaintiff's grievance").

information and belief were too conclusory to state a claim that the union arbitrarily failed to process grievances where the plaintiffs did not, inter alia, "give dates or even a time frame across which the grievances were filed," "describe the contents of the grievances," or "explain how long [any plaintiff] waited after filing a grievance before concluding that it had been abandoned, or how they knew that such a wait time was an abnormal or arbitrary delay"). Accordingly, Hammond has failed to plausibly allege that Local 1408 acted arbitrarily in handling his grievance.

Hammond also fails to plausibly allege that Local 1408 discriminated against him. To establish that a union breached its duty of fair representation under "the discrimination prong, a plaintiff must show 'discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" See Oltmanns, 837 F. App'x at 696 (quoting Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge, 403 U.S. 274, 301 (1971)).[10] But

---

[10] In Oltmanns, the Eleventh Circuit discussed the duty of fair representation in the context of the district court's denial of leave to amend, not its dismissal of the operative complaint. See Oltmanns, 837 F. App'x at 694 (explaining that the district court properly dismissed the complaint on other grounds). But this difference in posture does not affect the relevance of the Eleventh Circuit's analysis. Notably, the district court in Oltmanns had denied leave to amend because it determined that the proposed amended complaint still failed to state a claim for relief, and amendment would therefore be futile. Id. Since futility of amendment is a conclusion of law, the Eleventh Circuit reviewed this determination de novo (not for abuse of discretion) and applied "the usual motion to dismiss standard" to the proposed amended complaint. Id. In other words, the Eleventh Circuit analyzed whether the proposed amended complaint contained sufficient factual material, accepted as true, to "sufficiently allege that [the union] breached its duty of fair representation." See id. at 697. This is, of course, the standard which the Court must apply to the Second Amended Complaint in resolving the instant Motion. See Iqbal, 556 U.S. at 678.

Hammond does not plead any facts permitting even an inference that Local 1408 treated him differently from anyone else, let alone that it did so intentionally. Accordingly, the facts Hammond alleges in the Second Amended Complaint do not permit even an inference that Local 1408 discriminated against him. See id. (even where the plaintiff alleged "that under the past port practice, other employees," but not the plaintiff, "ha[d] received clerk and checker seniority . . . based on deck and dockmen hours," he still failed to state a claim under the discrimination prong without allegations suggesting that the difference in treatment was intentional).

Finally, Hammond does not plausibly allege that Local 1408 acted in bad faith. The bad-faith prong requires a showing that the union acted with an "improper motive or purpose." See id. at 696–97 (collecting cases);[11] Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1243 (7th Cir. 1997) ("Whereas the arbitrariness analysis looks to the objective adequacy of the Union's conduct, the discrimination and bad faith analyses look to the subjective motivation of the Union officials."). Here, Hammond alleges that "Local 1408's conduct was

---

[11] The Eleventh Circuit noted in Oltmanns that it was "not aware of any published decision" it had issued which "expressly requir[ed] allegations of improper motive under the bad faith prong." Oltmanns, 837 F. App'x at 696. But after collecting authority, the court stated, "it is clear to us that such a showing is required under Supreme Court precedent and our usual understanding of 'bad faith.'" See id. (citing Lockridge, 403 U.S. at 299, and Bad Faith, Black's Law Dictionary (11th ed. 2019)). For his part, Hammond does not dispute Defendants' assertion that the bad-faith prong requires a showing of "improper intent or motive." See Motion at 12.

in bad faith . . . as evidenced by its failure to represent" him and "the absence of any legitimate reason" for the denial of seniority rights.[12] See Second Amended Complaint ¶ 32. But he does not plead that Local 1408 acted with an improper purpose or motive, or any facts supporting an inference that it did. And his conclusory assertion that Local 1408 did not have "any legitimate reason" to deny him seniority rights is not entitled to an assumption of truth and fails to support an inference of such improper intent or motive. Accordingly, the allegations in Hammond's Second Amended Complaint do not plausibly suggest that Local 1408 acted in bad faith.

Having failed to allege facts which plausibly suggest that Local 1408 is liable under any of the three alternatives to establish a union's breach of its duty of fair representation, Hammond has therefore failed to state a claim for relief against Local 1408. See Twombly, 550 U.S. at 546. In arguing that the allegations in the Second Amended Complaint are sufficient, Hammond asserts that "[w]hen a union deliberately turns its back on an employee and sacrifices that employee's contractual rights, it has acted improperly." See Response at 6 (quoting Bennett v. Loc. Union No. 66, Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, 958 F.2d 1429, 1438 (7th Cir. 1992)). The problem with this argument is that even accepting Hammond's factual allegations as

---

[12] Notably, Hammond does not appear to allege that there was no legitimate reason for Local 1408's delay in making a determination as to his grievance.

true and drawing all reasonable inferences in his favor, those allegations simply do not establish that Local 1408 "deliberately turn[ed] its back" on him. Cf. Bennett, 958 F.2d at 1435 (in the case Hammond cites, the court reached such a conclusion because a union and employer intentionally "acted on an ad hoc basis" to deny the benefits of the collective bargaining agreement to "selected individuals" but not others). Setting aside Hammond's legal conclusions, and assuming arguendo that Hammond's grievance was meritorious, the allegations in his Second Amended Complaint establish only that Hammond submitted a grievance and Local 1408 "failed to provide any determination" regarding this grievance after some unspecified amount of time. See Second Amended Complaint ¶¶ 23–27, 30–35. None of the facts Hammond alleges suggest that any deficiency in handling his grievance was deliberate, or that it was more than simple "'negligence' or [a] 'mistake in judgment.'" See Oltmanns, 837 at 696. While Hammond may have shown the possibility that Local 1408 breached its duty, his allegations "stop[ ] short of the line between possibility and plausibility." See Twombly, 550 U.S. at 546. As the Supreme Court has made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Here, Hammond's threadbare allegations and conclusory statements in the Second Amended Complaint are simply insufficient to establish that Local 1408

processed his grievance arbitrarily, discriminated against him, or acted in bad faith. Accordingly, Hammond's argument is unavailing.

Hammond also argues in his Response that Local 1408 "employed an irrational interpretation of the seniority provisions of the CBA" to deny him seniority. See Response at 7. But this argument contradicts Hammond's factual allegations in his Second Amended Complaint, where he affirmatively alleges that Local 1408 "failed to provide any determination" at all regarding his grievance.[13] See Second Amended Complaint ¶ 27. The facts Hammond pleads in his Second Amended Complaint do not create a reasonable inference that Local 1408 reached any conclusion about the interpretation of the seniority provision, let alone that it relied on such an interpretation to make any decision or recommendation regarding Hammond's grievance.[14] Accordingly, Hammond's argument is unavailing because it is not supported by any well-pled allegations of fact. Because Hammond has not alleged sufficient factual

---

[13] As noted above, despite seeking leave to amend partly because Local 1408's "executive board finally addressed [Hammond's] grievance, denying him relief," see Motion to Amend at 2, Hammond still alleges in his Second Amended Complaint that "[t]o date, no decision has been rendered" on his grievance. See Second Amended Complaint ¶ 24. But even if Hammond had alleged that Local 1408 affirmatively denied him relief, this would not mean that it found his grievance to be meritless, let alone that it did so based on its interpretation of the seniority provisions (and not some other reason). See Samples, 755 F.2d at 886 (stating that a union has discretion to refuse to pursue even a meritorious grievance). Accordingly, such an allegation—without more—would not lead to a different result.

[14] Because Hammond's allegations do not suggest that Local 1408's interpretation of the seniority provision was the reason it "failed to provide any determination," the Court does not analyze whether applying such an interpretation would constitute arbitrary, discriminatory, or bad-faith conduct.

content, accepted as true, to permit any reasonable inference that Local 1408 breached its duty of fair representation, Hammond's claim in Count I is due to be dismissed.

### B. Breach of the Collective Bargaining Agreement

As discussed above, Hammond's claim that USMX breached the CBA by denying him seniority is "'inextricably interdependent'" with his claim against Local 1408.  See Coppage, 281 F.3d at 1204 (quoting DelCostello, 462 U.S. at 165).  Accordingly, the failure of Hammond's claim against Local 1408 is fatal to his claim against USMX in Count II, which the Court will dismiss on this basis.  See DelCostello, 462 U.S. at 165 (explaining that "[t]o prevail against either the company or the [u]nion" on a hybrid claim, an employee "must not only show" a breach of the collective bargaining agreement, "but must also carry the burden of demonstrating a breach of duty by the [union]" (emphasis added, internal quotation marks omitted)); Parker, 855 F.2d at 1521–22 (holding that the breach of a union's duty of fair representation is "a crucial element" of a "hybrid § 301/fair representation claim" against a union and employer); Rupcich v. United Food & Comm. Workers Int'l Union, 833 F.3d 847, 853 (7th Cir. 2016) ("If one claim fails, 'neither claim is viable.'" (quoting Crider, 130 F.3d at 1241)); Chaparro-Febus v. Int'l Longshoremen Ass'n, Loc. 1575, 983 F.2d 325, 331 (1st Cir. 1992) (summary judgment was warranted on the plaintiffs' hybrid claims against an employer because they were "unable to establish [the union's] breach

of the duty of fair representation"). In doing so, the Court need not and does not determine whether (or to what extent) Hammond is entitled to seniority under the CBA, or whether USMX's failure to credit Hammond with seniority constituted a breach of the CBA. See Oltmanns, 837 F. App'x at 695 ("Because we conclude that the proposed complaint fails to sufficiently allege that Local 1475 breached [its] duty [of fair representation], we end our analysis there. We need not reach the claim that Georgia Stevedore breached a collective bargaining agreement, and we do not.").

## V.     Conclusion

Because Hammond fails to allege sufficient factual material, accepted as true, to plausibly state a claim that Local 1408 breached its duty of fair representation, his claim in Count I is due to be dismissed. And without a viable claim that Local 1408 breached its duty of fair representation, Hammond cannot pursue his claim in Count II that USMX breached the CBA. The Motion is therefore due to granted, and the Second Amended Complaint is due to be dismissed.

Accordingly, it is

**ORDERED:**

1. The Joint Motion to Dismiss Second Amended Complaint and Supporting Memorandum of Law of Defendants International

       Longshoremen's Association, Local 1408 and United States Maritime Alliance, LTD (Doc. 25) is **GRANTED**.

2. Plaintiff's Second Amended Complaint for Relief and Demand for Jury Trial (Doc. 14) is **DISMISSED**.

3. The Clerk of the Court is directed to enter judgment in favor of Defendants, terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on August 21, 2024.

*[signature]*

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record